Michael J. Dahlin,                                            Civil No. 08-6225 (JMR/AJB)

        Petitioner,

     v.                                                     **REPORT AND RECOMMENDATION**

Jessica Symmes,

        Respondent.

---

This matter is before the Court, Magistrate Judge Arthur J. Boylan, on Petition

Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Petitioner

Michael Dahlin is a prisoner confined at the Minnesota Correctional Facility at Oak Park

Heights, Minnesota, as the result of a conviction and sentencing in Hennepin County District

Court. Mr. Dahlin was convicted by a jury on a charge of aiding and abetting second-degree

intentional murder for which he was sentenced to a prison term of 433 months. The action has

been referred to the magistrate judge for report and recommendation to the district court under

28 U.S.C. § 636 and Local Rule 72.2(b).

        The prisoner alleges in his petition that the evidence of intent was insufficient to

support the verdict, the sentence unfairly exaggerates the severity of the conduct in violation of

the Eighth Amendment, and he was denied a trial before an unbiased judge in violation of

Fourteenth Amendment due process. Respondent opposes this section 2254 action, asserting that

the petitioner has not exhausted his state court remedies with respect to federal causes of action

and has procedurally defaulted on each of those claims. Respondent further contends that the

petitioner has not established grounds for relief as to the merits of his claims and is not entitled

to an evidentiary hearing.  For the reasons stated below it is recommended that the petition

[Docket No. 1] be dismissed with prejudice.

## Background and Claims

**Offense.**[1]  Petitioner Michael Dahlin was convicted of aiding and abetting second

degree intentional murder as a result of his participation in the December 16, 2000, shotgun

slaying of Dustin Jirasek.  Mr. Jirasek died from a single round fired at close range as he opened

the door to his house when he was visited by Michael Dahlin and Mark Staats.  Dahlin and

Jirasek were acquaintances who had been introduced to one another in the fall of 2000 by

Dahlin's girlfriend, Sarah Troska, a co-worker of Mr. Jirasek.  In its recitation of circumstances

relating to the killing, the Minnesota Supreme Court stated:

> Troska encouraged Dahlin to audition for a place in Jirasek's band.  However, Jirasek did
> not offer Dahlin a band position, telling Troska that the other band members were
> offended by the nature of the tattoo on Dahlin's arm.  When Troska relayed this news to
> Dahlin, who was a self-described methamphetamine addict, he became visibly angry and
> telephoned Jirasek in a rage.  Unsettled by this call, Jirasek later called Dahlin back and
> smoothed things over.
>
> In the following months, Dahlin became suspicious that Troska and Jirasek were having
> an affair.  In October 2000, Dahlin drove his truck to Jirasek's home to confront Jirasek
> about his suspicions.  Although Dahlin's shotgun was in his truck, Dahlin did not take the
> gun along when he walked to Jirasek's door to speak with him.  Two days later, an
> 'urgent care center' notified Jirasek and his wife that it had received a telephone call
> saying that someone at the Jirasek home would soon need the center's services.
>
> After Dahlin's visit and the call from the urgent care center, Jirasek quit his job so that he
> could end all contact with Troska and Dahlin.  Jirasek later accepted his employer's offer
> of a shift-transfer, which allowed Jirasek to return to work without seeing Troska.

---

[1] Facts relating to the criminal charges are taken from State v. Dahlin, 695 N.W.2d 588
(Minn. 2005).  This factual basis was cited in a subsequent Minnesota Supreme Court decision,
State v. Dahlin, 753 N.W.2d 300, 302 (Minn. 2008), as a reference for facts underlying the
criminal conduct in this matter.  See Smith v. Kemna, 309 Fed. Appx. 68 (8th Cir.
2009)(unpublished opinion)(facts quoted from state appellate decision).  This case has gone
through two full rounds of the Minnesota state trial court and appellate court processes.

Jirasek last worked with Troska in October 2000, and the two never saw each other again, Nonetheless, Dahlin's suspicions persisted.

In the months before the shooting, Dahlin told a number of people that he wanted to hurt Jirasek. Close friends of Dahlin testified that Dahlin had said he wanted to 'kick [Jirasek's] butt,' and that he had asked for help to 'kick [Jirasek's] ass.' On December 15, 2000, Dahlin became angry at Jirasek because Troska told him that months earlier Jirasek had made an insulting comment about Dahlin's male anatomy. Dahlin testified that Troska also told him she had slept with Jirasek, but Troska testified that she had neither had an affair with Jirasek nor told Dahlin that she had. The day before Jirasek was shot, Dahlin told Troska he was going to 'kill [Jirasek].' Troska did not believe Dahlin was serious, because threatening to kill people was 'a normal part of his ranting and raving.'

The next day, Dahlin armed with his shotgun and a recently purchased semi-automatic handgun, went to Jirasek's house accompanied by his friend, Staats. En route, the two men stopped at a K-Mart to buy ski masks, shotgun ammunition, and a container of gasoline.

At the second trial of this matter Mark Staats testified[2] that both he and Michael Dahlin went to the door of Mr. Jirasek's house and that Dahlin carried the shotgun and fired the shot that killed Jirasek. On the other hand, Dahlin testified at both trials, acknowledging that he was at the murder scene, but that he was unarmed and had gone to the back of the house, and that Mark Staats held the shotgun and fired the shot that killed Jirasek.[3] DNA testing revealed the presence of the victim's blood on pants found in Dahlin's bedroom, and gloves seized from Dahlin's vehicle contained both Dahlin's and Jirasek's DNA, but not Staat's DNA.[4]

**Procedural History.** Dustin Jirasek was murdered on December 16, 2000.

---

[2] Trial Tr., page 2107. Mark Staats did not testify at the first trial, though he made statements to police that were admitted into evidence at the first trial and were consistent with his later trial testimony. See State v. Dahlin, 695 N.W.2d 588, 591.

[3] Trial Tr. pp. 2439-40; State v. Dahlin, 695 N.W.2d at 592.

[4] Id.

Michael Dahlin was arrested and booked for homicide on December 18, 2000,[5] and he was

indicted in Hennepin County on a first-degree aiding and abetting murder charge on January 16,

2001.[6] Search warrants were executed in the investigation, and the trial court suppressed

bloodstained clothes that had been seized pursuant to a warrant.[7] The prosecution took an

immediate appeal of the pretrial suppression order, and the order was reversed in a decision

issued by the Minnesota Court of Appeals on December 26, 2001.[8] Mr. Dahlin was convicted by

jury verdict returned on June 11, 2003, on a charge of aiding and abetting first-degree murder,

and he was sentenced to life in prison for the offense. The conviction was reversed on direct

appeal to the Minnesota Supreme Court, based upon the determination that the trial court erred in

failing to instruct the jury as to a lesser included offense of second-degree intentional murder.[9]

       On remand for new trial in Hennepin County District Court, the case was again

assigned to Judge Thor Anderson, the same judge who had presided over the first trial. Mr.

Dahlin thereafter submitted a notice peremptorily removing the judge as a matter of right

pursuant to Minn. R. Crim. P. 26.03, subd. 13(4).[10] The defendant did not request

---

[5] State v. Dahlin, 2001 WL 1646089 (December 26, 2001, Minn. App.)(unpublished decision).

[6] Id.

[7] Id.

[8] Id.

[9] State v. Dahlin, 695 N.W.2d 588, 590 (Minn. 2005).

[10] State v. Dahlin, 753 N.W.2d 300, 302 (Minn. 2008). Minn. R. Crim. P. 26.03, subd. 13(4) provides:

> **Notice to Remove.** The defendant or the prosecuting attorney may serve on the other party and file with the court administrator a notice to remove the judge assigned to a trial or hearing. The notice shall be served and filed within seven

disqualification for cause at that time.[11]  The State opposed the notice of peremptory removal and

its objection to the removal was sustained by Order dated September 16, 2005,[12] thereby

invalidating the defendant's Notice to Remove.  Dahlin then filed a Petition for Writ of

Prohibition with the Minnesota Court of Appeals, seeking to preclude the Hennepin County

District Court from enforcing the Order denying the right of removal pursuant to Minn. R. Crim.

P. 26.03, subd. 13(4).[13]  In addition, Dahlin filed a Notice of Motion and Motion to Remove for

Cause on November 10, 2005, based upon his advance knowledge that the Petition for Writ of

Prohibition would be denied.[14]  The petition for writ of prohibition was indeed denied by Order

dated November 14, 2005, and a request for emergency stay of the trial was also denied.[15]

_____

> (7) days after the party receives notice of which judge is to preside at the trial or
> hearing, but not later than the commencement of the trial or hearing.  No notice to
> remove shall be effective against a judge who has already presided at the trial,
> Omnibus Hearing, or other evidentiary hearing of which the party had notice,
> except upon an affirmative showing of cause on the part of the judge.  After a
> party has once disqualified a presiding judge as a matter of right, that party may
> disqualify the substitute judge only upon an affirmative showing of cause

[11] Minn. R. Crim. P. 26.03, subd. 13(3) provides:

> **Interest or Bias of Judge.**  No judge shall preside over a trial or other proceeding
> if that judge is disqualified under the Code of Judicial Conduct.  A request to
> disqualify a judge for cause shall be heard and determined by the chief judge of
> the judicial district or the assistant chief judge if the chief judge is the subject of
> the request.

[12] Appendix to State's Memorandum. Order and Memorandum by Beryl A. Nord, Judge of District Court.

[13] Id., Petition for Writ of Prohibition.

[14] Id., Notice of Motion and Motion to Remove for Cause and letter from defendant's counsel to Judge Anderson dated November 10, 2005.

[15] Appendix to State's Memorandum. Order executed by Edward Toussaint, Minnesota Court of Appeals Chief Judge.

Meanwhile, the second jury trial in this case commenced on November 14, 2005, before Judge Anderson. Also on November 14, 2005, an Order denying defendant's motion to remove the trial judge for cause was issued by Hennepin County District Court Chief Judge Lucy A. Wieland.[16] Dahlin did not further appeal either the denial of the petition for writ of prohibition by the court of appeals, or the denial of the removal for cause by Judge Wieland. At trial the jury found Mr. Dahlin guilty of aiding and abetting second-degree murder, and he was subsequently sentenced to 433 months in prison.[17] Dahlin appealed his second conviction and sentence to the Minnesota Court of Appeals, alleging that: (1) he was unlawfully denied his right of automatic removal of the trial judge following remand; (2) the evidence was insufficient to prove intent; and (3) the sentence was an upward durational departure from the guideline sentence which exaggerated the criminality of the conduct.[18] The court of appeals affirmed the conviction and sentence.[19] Mr. Dahlin appealed the court of appeals decision to the Minnesota Supreme Court on the same grounds, but review was granted solely on the claim that "[a] criminal defendant's right to peremptory removal of a trial judge is guaranteed by the Minnesota Rules of Criminal Procedure and Applies on Remand when a New Trial is Ordered."[20] The Minnesota Supreme Court affirmed the conviction in an opinion dated July 24, 2008. This habeas corpus case was commenced on December 2, 2008. In this action Petitioner alleges

---

[16] Id., Order dated November 14, 2005.

[17] State v. Dahlin, 753 N.W.2d 300, 302.

[18] State v. Dahlin, 2007 WL 2998956 (Minn. App. October 16, 2007).

[19] Id.

[20] Appendix to State's Memorandum. Appellant's Brief.

insufficiency of evidence of intent, violation of the Eighth Amendment in regards to the length of sentence, and violation of due process with respect to removal of the trial judge.

**Standard of Review**

A writ of habeas corpus may issue only if the underlying state court adjudication resulted in a decision that (1) was contrary to clearly established federal law, or involved an unreasonable application of a clearly established federal law; or (2) was based on an unreasonable determination of the facts in light of evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). This Court "presumes that the state court's factual determinations are correct," a presumption that "may be rebutted only by clear and convincing evidence." 28 U.S.C. § 2254(e)(1), Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).

Federal habeas relief is only available to a person in custody in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. §2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991)("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). As a threshold matter, a petitioner must present a federal question in his petition for relief.

A federal district court may not conduct the initial review of a habeas petitioner's constitutional claims. See O'Sullivan v. Boerckel, 526 U.S. 838, 842-44 (1999). A state prisoner must normally exhaust all available state judicial remedies before a federal court will entertain a petition for habeas corpus. 28 U.S.C. § 2254(b)(1)(A); O'Sullivan at 842. The state courts must have the first opportunity to hear the claim and "pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971)(citations omitted); Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993).

**Discussion**

**Exhaustion.** The respondent argues that petitioner's claims are procedurally

barred because he did not alert the Minnesota Supreme Court to the federal nature of his claims.

A federal court cannot consider the merits of a habeas corpus petition unless the petitioner can

demonstrate exhaustion of all of the available state court remedies. 28 U.S.C. §2254(b) and (c),

Rose v. Lundy, 455 U.S. 509, 510, 102 S.Ct. 1198 (1982). Exhaustion of state remedies is

required to ensure that state courts have the initial opportunity to review and adjudicate a

petitioner's federal constitutional claims. Coleman v. Thompson, 501 U.S. 722, 731 (1991). A

claim is considered to be exhausted when the highest state court has been permitted a fair

opportunity to rule on the factual and theoretical substance of the claim. Krimmel v. Hopkins,

56 F.3d 873, 876 (8th Cir.)(cert. denied, 116 S.Ct. 578 (1995)); Ashker v. Leapley, 5 F.3d at

1179 (citing Picard v. Connor, 404 U.S. at 275-278). Indeed, in order to give the state courts one

full opportunity to resolve any constitutional issues, a prisoner must proceed through one full

round of the State's appellate review process. O'Sullivan v. Boerckel, 526 U.S. 838 at 845.

Under circumstances in which a state has a two-tiered appellate review system, comity requires

that review be requested at both appellate levels before the claims may be presented in federal

court. Id., 526 U.S. at 844. Failure to seek review of claims at all appellate levels of the state

court system represents non-exhaustion of those claims. A petitioner's claims in a habeas corpus

action must be based on an alleged violation of federal constitutional rights, as required by 28

U.S.C. § 2254(a). See Wainwright v. Goode, 464 U.S. 78, 83 (1983) ("[i]t is axiomatic that

federal courts may intervene in the state judicial process only to correct wrongs of a

constitutional dimension.")(citations omitted). Simply stated, a prisoner cannot raise federal

constitutional claims for the first time on petition for federal habeas corpus relief, and to provide

the State the necessary opportunity to pass upon and correct alleged violations of its prisoner's

federal rights, the prisoner must fairly present his constitutional claim in each state court, thereby

alerting those courts to the nature of the claim. <u>Carney v. Fabian</u>, 441 F.Supp.2d 1014, 1022

(D.Minn. 2006)(citations omitted). The federal nature of the claim must be fairly presented in

state court by reference to a specific federal constitutional right, a federal case, or a state case,

which raises a pertinent federal constitutional issue. <u>Cox v. Burger</u>, 398 F.3d 1025, 1031 (8th

Cir. 2005); <u>Abdullah v. Groose</u>, 75 F.3d 408, 411-12 (8th Cir. 1996). "[O]rdinarily, a state

prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition

or a brief (or a similar document) that does not alert it to the presence of a federal claim, in order

to find material, such as a lower court opinion in the case, that does so." <u>Baldwin v. Reese</u>, 541

U.S. 27, 32 (2004) (litigant "can easily indicate the federal law basis for his claim in a state-court

petition or brief, for example, by citing in conjunction with the claim the federal source of law

on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the

claim 'federal.'")

    In this instance, petitioner did not present federal claims to either the Minnesota

Court of Appeals or the Minnesota Supreme Court. Mr. Dahlin's brief to the court of appeals

expressly presents the issues as: "**ISSUE I**: Does the right to peremptory remove a trial judge, as

provided in Minn. R. Crim. P. 26.03, subd. 13(4) (2005), apply to a trial held after a conviction

has been reversed on direct appeal and a new trial ordered"; "**ISSUE II**: Is the evidence

sufficient to uphold the jury's guilty verdict for aiding and abetting second-degree intentional

murder"; and "**ISSUE III**: Does appellant's enhanced sentence unfairly exaggerate the

criminality of his conduct."[21] Neither the statement of issues presented nor the ensuing

---

   [21] Appendix to State's Memorandum. Appellant's Brief to the Minnesota Court of
Appeals.

discussion explicitly indicate that any of the above claims or supporting arguments constitute

challenges based upon federal law.  There are no citations to the United States Constitution or

federal case law, save a citation to In re Winship, 397 U.S. 358, 364 (1970) for the general

proposition that a conviction must be based upon proof beyond a reasonable doubt of every

element of the crime.[22]  However, in a reply brief to the court of appeals, Mr. Dahlin did cite

federal case law for the proposition that the denial of the right to remove the trial judge was

"structural error."[23]  The Minnesota Court of Appeals declined to consider the judge removal

claim on grounds that its prior ruling on writ of prohibition was not appealed to the supreme

court and was now the law of the case.[24]  With respect to the sentencing claim and the

sufficiency of evidence claim, as well as the judge removal claim, the court of appeals did not

expressly or implicitly recognize the existence of any claims based on federal law.

Similarly, in his Petition for Review to the Minnesota Supreme Court, Dahlin

identified and described the issues on which he sought review as: "**ISSUE 1**: Minn. R. Crim. P.

26.03, subd. 13(4) guarantees a criminal defendant the peremptory right to remove a judge from

presiding over trial.  As a matter of first impression, does Minnesota law recognize this right

when a conviction is reversed and a new trial ordered?" (emphasis added); "**ISSUE 2**: Was the

evidence presented at trial sufficient to prove that petitioner committed second-degree

intentional murder?"; and **"ISSUE 3**: Does petitioner's sentence unfairly exaggerate the

---

[22]  Appendix to State's Memorandum. Appellant's Brief to the Minnesota Court of
Appeals, page 24.  The brief also cited North Carolina v. Alford, 400 U.S. 25 (1970), though in a
context that cannot reasonably be construed to present a federal claim.  Id., page 31.

[23]  Id., Appellant's Reply Brief, pp. 1-2.

[24]  Id.,  State v. Dahlin, 2007 WL 2998956, *3.

criminality of his conduct, [in light of assigned criminal history points for a firearms offense, and

an enhancement based upon zone of privacy]?"  Again, the Petition for Review further discussed

each of these issues in the context of Minnesota statutes and/or case law and contains no

reference whatsoever to federal law or federal cases.  The supreme court invited briefing on the

removal issue only, and in such briefing the defendant referenced Arizona v. Fulminante, 499

U.S. 279 (1991), as a secondary citation from State v. Dorsey, 701 N.W.2d 238, 252 (Minn.

2005), with regard to removal of the trial judge.[25]  The Appellant's Reply Brief contained no

federal claims or references.[26]  The supreme court declined to apply law-of-the-case doctrine and

went to the merits of the judge removal issue.[27]  The matter was addressed solely in the context

of Minnesota state law, without acknowledgment of any arguable federal claim.  In short, neither

the petitioner's appellate briefs nor the appellate decisions address issues of federal

constitutional law either explicitly or by inference via citation to federal case law.

         By traverse in response to the State's Memorandum, the petitioner contends that

the federal constitutional violations were clear on the face of issues brought on direct appeal,

without having to be labeled as such.  To the contrary, federal claims are not readily apparent

and in no instance whatsoever did the petitioner actually state that a federal constitutional claim

was being alleged.  In state court briefing on the claims, the petitioner's substantive arguments

were based entirely upon Minnesota state cases, and the resulting decisions were likewise based

upon state cases and procedural rules.  On the judge removal issue, the Petition for Review to the

---

[25]  Appellant's Brief to the Minnesota Supreme Court, page 19.

[26]  Appellant's Reply Brief to the Minnesota Supreme Court.

[27]  State v. Dahlin, 753 N.W.2d 300, 305 n.7.

supreme court explicitly alerted the court to the existence of a "Minnesota state law" claim only. Furthermore, on the direct appeals in the state courts the issue was consistently presented in the context of the right to peremptory removal of a judge, despite the petitioner's convoluted efforts to spin the claim into a removal for cause issue. Peremptory removal is a creature of state rule and state law, and the court here finds no corresponding federal constitutional right to peremptory removal of a judge. In any event, the existence of a federal claim is certainly not apparent on the face of the issue. With respect to the excessive sentence issue, no reference to a federal claim was made in direct appeal arguments, and neither the court of appeals nor the supreme court was given any reason to presume that a federal Eighth Amendment claim was being presented for review. Indeed, there is no contention that the sentence was in excess of the statutory maximum for the conviction sentences, and "'[a] sentence within statutory limits is generally not subject to review' under the Eighth Amendment." United States v. Murphy, 899 F.2d 714, 719 (8th Cir. 1990)(quoting United States v. Boone, 869 F.2d 1089, 1092-93 (8th Cir. 1989). See also Stevens v. Armontrout, 787 F.2d 1282, 1284 (8th Cir. 1986)(200-year state sentence within the statutory maximum). Finally, in regards the sufficiency of evidence issue, a writ of habeas corpus will be granted on such a claim only if the trial record indicates that no rational trier of fact could have found proof of guilt beyond a reasonable doubt, and the state supreme court's interpretation on the meaning of a deliberate act, i.e. intent, is controlling. McDonald v. Bowersox, 101 F.3d 598, 599 (8th Cir. 1996)(citations omitted). In this case the record contains evidence that the defendant made prior statements suggesting an intent to kill the victim; he brought a shotgun to the scene of the murder; and he stopped to purchase ammunition and ski masks on the way to the victim's home. The court finds no clear federal constitution grounds on which to challenge the determinations on direct appeal, and in particular, this court

12

concludes that the Minnesota appellate courts were never alerted to the existence of the Eighth Amendment claim that is alleged in this section 2254 case. Mr. Dahlin's claims have not been fairly presented to the state courts, and the claims are therefore unexhausted and may not be considered by the court in this federal habeas action.

**Procedural Default.** When a petitioner has failed to fairly present federal constitutional claims in state court, the federal court must determine whether the state procedural rules would allow hearing on the merits in a state court proceeding. McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997). If the state's procedural rules would preclude a hearing on the merits, the petitioner has procedurally defaulted and is likewise procedurally barred from obtaining federal habeas relief, unless cause and prejudice, or miscarriage of justice, can be demonstrated. Id. Under Minnesota law, "[o]nce a [defendant] has taken a direct appeal, all claims raised in the direct appeal as well as 'all claims known but not raised' at the time of the direct appeal are barred from consideration in any subsequent petitions for post-conviction relief." Cooper v. State, 745 N.W.2d 188, 190-91 (Minn. 2008)(quoting State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976)). If the petitioner has failed to exhaust his state court remedies, and if the court to which he should have presented his claim would now find it procedurally barred, then the claim is procedurally defaulted. Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir. 1995) (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)). A claim that is procedurally defaulted under state law is barred from federal habeas review only if the state procedural rule is firmly established and regularly followed. Oxford v. Delo, 59 F.3d 741, 744 (8th Cir. 1995). Minnesota's Knaffla rule is a state procedural rule that is firmly established and regularly followed. See 9 MINN. PRAC., CRIMINAL LAW AND PROCEDURE § 39.1 (3rd ed.)(stating Knaffla rule is "frequently and strictly applied to deny relief in post conviction proceedings.)

13

Although the state court procedural bar is "nearly absolute," a petitioner can avoid the bar if he "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law," or shows his actual innocence. Reagan v. Norris, 279 F.3d 651, 656 (8th Cir. 2002) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991.)) Petitioner in this instance offers absolutely no explanation or cause for not explicitly alleging federal claims on direct appeal. Furthermore, petitioner has not alleged the actual prejudice necessary to overcome procedural default. "To demonstrate prejudice, a petitioner must show that the errors of which he complains 'worked to his actual and substantial disadvantage, infecting his entire [hearing] with error of constitutional dimensions.'" Charron v. Gammon, 69 F.3d 851, 858 (8th Cir. 1995)(citations omitted). Petitioner in this matter has neither picked up the challenge nor carried the burden of showing cause and prejudice as required to avoid dismissal of claims based upon procedural default. Likewise, petitioner has made no showing of fundamental miscarriage of justice with respect to any of his claims because he has made no cognizable attempt to demonstrate "that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" McCall v. Benson, 114 F.3d 754, 758 (citing Brownlaw v. Groose, 66 F.3d 997, 999 (8th Cir. 1995)(quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851, 867 (1995)).

In his traverse the petitioner contends that he has made "every attempt" to 'demonstrate cause for the default' or to 'demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" That is simply not the case. Petitioner's submissions, including the traverse, do not contain any substantive discussion that might constitute a demonstration of cause and prejudice or fundamental miscarriage of justice. Since the prisoner has procedurally defaulted his unexhausted claims, and therefore has no further opportunity to exhaust those

14

claims in state proceedings, dismissal of this action without prejudice to permit full exhaustion is

not required and the petition is properly dismissed with prejudice on procedural grounds.

Based upon all of the files, records, and proceedings herein, the magistrate judge

makes the following:

**RECOMMENDATION**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that Michael J. Dahlin's Petition Under 28 U.S.C. § 2254 for

Writ of Habeas Corpus by a Person in State Custody [Docket No. 1] be **dismissed with**

**prejudice**.


Dated:    September 15, 2009

s/Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. Written objections shall be filed with the Clerk of Court and served upon opposing parties before September 29, 2009.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Eighth Circuit Court of Appeals.